| | |
|---|---|
| Joseph C. Sun, <br>     Plaintiff, <br><br> v. <br><br> Stacey Smith and Joe L. Loadholt <br>     Defendants. | Case No. 9:08-cv-4021-RMG <br><br> **ORDER** |

This action was filed by the Plaintiff, *pro se*, pursuant to 42 U.S.C. § 1983. Plaintiff alleges that the Defendants, a Department of Motor Vehicles employee and police officer, respectively, violated his constitutional rights. Defendant Smith has moved for summary judgment on Plaintiff's claims. Plaintiff opposed the motion. The Magistrate recommended granting Defendant Smith's motion. Plaintiff timely filed objections to the Report. After a *de novo* review of the Record, for the reasons set forth herein, Defendant Smith's motion for summary judgment is granted.

## Background

Plaintiff filed this action claiming that Defendant Stacey Smith, a supervisor at the South Carolina Department of Motor Vehicles in Ridgeland, South Carolina, violated his Constitutional rights.[1] Plaintiff alleges that on March 28, 2007, he went to the Department of Motor Vehicles Office to exchange his Georgia commercial driver's license for a South Carolina commercial driver's license. Plaintiff complains that he was told to fill out a new application, and that when asked about his birth date, he "gave his correct birth date which was different from the birth date used on some other documents

---

[1] Plaintiff also sued Officer Joe L. Loadholt but Officer Loadholt has failed to answer and the clerk's office has entered a notice of default. (Dkt. No. 46).

Page 1 of 12

in the past because the old documents were copied from an erroneous court record based on the Chinese calendar" because Plaintiff was born on a Chinese island. (Dkt. No. 1).

Plaintiff further alleges that when he was asked whether he had a South Carolina driver's license he answered "no", but told "the lady" he had a South Carolina license "over ten years ago". (Dkt. No. 1). Plaintiff alleges that "the lady" checked the computer, and told him that it appeared his driving privilege in South Carolina "was suspended in the past." (*Id.*). Plaintiff told "the lady" at the counter that he was not aware of a suspension, at which time "the lady" went inside the office and consulted with the Defendant Smith, her supervisor. (*Id.*).

Plaintiff claims he had an "unpleasant encounter" with Defendant Smith a year prior when he was accompanying a friend who was trying to get a car title in his name but had no driver's license. (Dkt. No. 59). Plaintiff claims that when Defendant Smith told his friend he could not get a car title because he had no driver's license, Plaintiff states that he criticized her and said that she "fabricated that rule". (*Id.*). In the incident involving Plaintiff's suspended license, Plaintiff further alleges that after the lady went inside the office and consulted with Smith concerning his application, Smith "instructed the counter lady to lie to [Plaintiff] that they were waiting for Georgia DMV to verify [Plaintiff's] driving record". (Dkt. Nos. 1, 59, and 78). Plaintiff also claims that Smith is prejudiced against Asians and against Plaintiff in particular, and developed a scheme to cause him to be falsely charged with a crime and arrested. (*Id.*). Plaintiff alleges that the Department of Motor Vehicles had a Form 4057 which would have allowed him to correct his name and birth date, but that Smith "disallowed [him] knowledge of his rights to any correction because she had already called the Ridgeland Police and talked to

Defendant Joe Loadholt [a police officer]" as part of a "conspiracy" to falsely charge him with alteration of a drivers' license and to have him falsely arrested and maliciously prosecuted. (Dkt. Nos. 1, 59, and 78).

Plaintiff alleges that after waiting at the DMV, Officer Loadhold came to the Ridgeland DMV and advised Plaintiff that he was arresting him. Plaintiff alleges that he had to spend the night at the Jasper County Detention Center, and was released the next day after putting up a bond of Two Hundred Thirty Three ($233.00) Dollars. Plaintiff also alleges that he had to pay a towing company Two Hundred Twenty Five ($225.00) Dollars to get his car back. (Dkt. Nos. 1 and 59). Plaintiff alleges that, after several phone calls, the Department of Motor Vehicles office in Columbia sent him a copy of the driver's license suspension notice and informed him that his thirty day suspension was only in 2003. (Dkt. No. 59). Plaintiff further alleges that all he had to do was pay the One Hundred ($100.00) Dollar reinstatement fee in order to get his South Carolina commercial driver's license. (Dkt. No. 59).

Plaintiff alleges that he went back to the Ridgeland DMV, but that the Defendant Smith told Plaintiff that she would not look at his documents from the Columbia DMV and would not let him apply for a driver's license. (Dkt. No. 59). Plaintiff claims that Smith further told him that he could not drive in South Carolina. (*Id.*). Plaintiff alleges that he then went to the Bluffton DMV, presented the same documents and identifications, and was informed that he only needed to fill out Form 4057 to correct any discrepancies on his name and birth dates. (Dkt. No. 59). Plaintiff alleges that Smith had "kept the form a secret", but he was finally able to obtain his South Carolina commercial drivers license at the Bluffton DMV. (*Id.*).

Plaintiff brought this suit, arising out of the above, claiming that he was denied equal protection of the laws by the Defendant Smith based on her prejudice and bias against him because of his race and national origin, and that Smith also used her office to retaliate against him for having criticized her in the past. Plaintiff alleges that the Defendant Smith's actions caused him to be falsely arrested on unfounded charges, and states that he was found not guilty by the Ridgeland Municipal Court on the charge of alteration of license, which was the only charge against him. (Dkt. Nos. 1, 59, and 78). Plaintiff further asserts a claim for "illegal seizure", alleging that Smith took his social security card and voter's registration card for examination while he was at the Ridgeland DMV, Plaintiff claims Smith kept his voter registration card and that he had to get a new one. (*Id.*). Plaintiff seeks monetary damages. (*Id.*).

In support of summary judgment, the Defendant Stacey Smith has submitted an affidavit wherein she attests that she is employed as the Branch Manager of the South Carolina Department of Motor Vehicles Office in Ridgeland, South Carolina. (Dkt. No. 62-2). Defendant Smith states that on March 28, 2007, Plaintiff attempted to apply for a South Carolina commercial driver's license and was notified by the counter clerk of disparities between the information he provided on his application and information maintained by the South Carolina Department of Motor Vehicles. (*Id.*). She states that after receiving this information, she contacted the main office of the South Carolina Department of Motor Vehicles in Columbia and informed other personnel there of this information and about her dealings with Plaintiff. (*Id.*). Smith attests that she did not contact the Ridgeland Police regarding Plaintiff's application and played no part in the decision to contact the police or in Plaintiff's arrest. (*Id.*). Rather, Smith, upon

information and belief, states that personnel at the main office in Columbia contacted the Ridgeland Police Department and notified them of Plaintiff's false or misleading application. (*Id.*). Smith further states that her actions on the day in question were a result of the false or misleading information provided by Plaintiff on his application for a drivers license, and had nothing to do with his race or ethnicity. (*Id.*).

Plaintiff has submitted an affidavit in support of his opposition to Defendant Smith's motion for summary judgment in which he states that after he filled out the application form, the counter clerk never told him there was any disparity before or after she consulted with Defendant Smith, and no one ever told him anything was wrong. (Dkt. No. 78). Plaintiff states that he was asked to wait while the DMV personnel were checking and waiting for his Georgia driving record. (*Id.*). Plaintiff also states that he was never informed of SCDMV Form 4057 to correct any discrepancy in his application. (*Id.*). As noted above, Plaintiff attests that the counter clerk took his social security card and his voter registration card to go inside to consult with Defendant Smith, but that when the clerk came back out she returned only his social security card but not his voter registration card. (*Id.*). Plaintiff contends that after Officer Loadholt arrived, he went inside to talk to the Defendant Smith first, then told Plaintiff to go outside to talk to him [the officer]. Plaintiff states that Loadholt told him that the "supervisor inside" said he had used false information on his license application, and that he was therefore putting Plaintiff under arrest for the offense of alteration of driver's license. (*Id.*). Plaintiff avers that this charge was later dismissed by the Ridgeland Municipal Court. (*Id.*).

Plaintiff further states that several weeks later he received a letter from the Columbia DMV office stating that his driver's license had been suspended in 2002[2] for thirty days, and could be reinstated at any time by paying the One Hundred ($100.00) Dollar reinstatement fee. (Dkt. No. 78). Plaintiff attests that he did not know anything about that suspension, because he had moved to Georgia in 2001 and did not return to South Carolina until 2004. (*Id.*). Plaintiff attests that he went back to the original DMV and tried to pay the reinstatement fee, but that Smith told him that he could not apply for a South Carolina driver's license. (*Id.*). Plaintiff attests that the following day he went to the Bluffton DMV office, filled out the Form 4057 and paid the One Hundred ($100.00) Dollar reinstatement fee, and received a South Carolina drivers license (Dkt. No. 78).

## Law/Analysis

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). This Court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.*

Here, the Plaintiff does not make any "specific" objections in his response opposing the Magistrate's report and recommendation. Plaintiff simply restates the same allegations that he has in his complaint, amended complaint, and affidavit. (*See* Dkt.

---

[2] Plaintiff cites both 2002 and 2003 for the dates of the 30 day suspension (*see* Dkt. No. 59 vs. Dkt. No. 78) but for the purposes of this motion the date is of no consequence as the evidence, viewed under either and most favorable to Plaintiff does not give rise to an actionable Constitutional violation.

Nos. 1, 59, and 78). Nonetheless, this Court has conducted a *de novo* review to the extent that Plaintiff's objections could be construed as specific and for the reasons below, this Court grants Defendant Smith's motion for summary judgment.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

Further, while the Federal Court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, *see Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. *Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990)

As a state employee, the Defendant Smith is subject to suit under § 1983 for damages in her individual capacity. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Inmates v. Owens*, 561 F.2d 560 (4th Cir. 1977). However, Smith argues that, even though subject to suit under § 1983, she is entitled to dismissal of all claims asserted against her on the basis of qualified immunity.

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is well recognized that qualified immunity shields a government official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.

"In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level but at the level of its application to the specific conduct being challenged." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Thus, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity. *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). Hence, considered in the light most favorable to the Plaintiff, the question is whether the evidence is sufficient to give rise to a genuine issue of fact as to whether Defendant Smith's conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known and whether her conduct was unlawful in the situation she confronted. *See Cloaninger v. McDevitt*, 555 F.3d 324, 331 (4th Cir. 2009).

Accordingly, as detailed herein, considered in the light most favorable to the Plaintiff, the evidence before this Court shows that Defendant Smith was the supervisor in the Ridgeland DMV office on March 28, 2007, when Plaintiff went to that office seeking to exchange his Georgia commercial driver's license for a South Carolina driver's license. While Plaintiff states that at that time he knew nothing about the prior South Carolina driver's license suspension, he does not dispute that the DMV records showed that his driving privileges had been suspended and that DMV personnel informed him of this fact. Plaintiff also admits that he used a different birth date on his application than the birth date shown on other documents in the possession of the DMV.

The Record shows that after Defendant Smith was notified by the counter clerk of disparities between the information Plaintiff had provided on his application and the information maintained by the Department of Motor Vehicles, she contacted the main office in Columbia and informed personnel in Columbia of the discrepancies. The Record further reflects that Defendant Smith stated that she did not contact the Ridgeland Police Department regarding Plaintiff's application, and played no part in the decision to do so. The evidence further shows that the Defendant Loadholt arrived at the DMV office, went inside and spoke to Defendant Smith, and then came outside and told Plaintiff he was being arrested for using false information on his driver's license.

Plaintiff argues that a reasonable officer would not have called headquarters to investigate the situation further. But the Record contains no evidence that there is a genuine issue of fact as to whether it would have been clear to a reasonable officer, here Defendant Smith, that her conduct was unlawful, or that her actions were violating Plaintiff's constitutional rights. The undisputed facts that Plaintiff's driving privileges in

South Carolina had been suspended and that Plaintiff used a different birth date on his application than was shown in other documents provided sound reasons for Defendant Smith to have checked with her superiors before proceeding to process Plaintiff's application for a commercial driver's license. Thus, no reasonable person would have believed that they were violating Plaintiff's constitutional rights by taking this action under the facts presented. *Wiley*, 14 F.3d at 995 ("[I]f there is a 'legitimate question' as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity").

Plaintiff does make several allegations in both his verified complaint and his affidavit which might, if the Record supported the allegations, have been sufficient to support a constitutional claim. However, the Court finds the Record contains no such evidence supporting these claims. Plaintiff makes conclusory assertions that Defendant Smith instructed the counter clerk to lie to him about why he was having to wait and to keep everything "secret" from him, that it was Smith who called the Ridgeland Police, that Defendant Smith then "conspired" with Loadholdt to charge Plaintiff with a false charge, and that Smith made a false accusation against him when she called the Columbia main DMV office. Plaintiff fails to offer the Court any support for how he knows what Smith said or did outside of his presence, and has otherwise provided no evidence whatsoever to support his general and conclusory statements in the complaint and his affidavit, which do not themselves constitute allegations of fact but are instead mere supposition and speculation on his part. *See House v. New Castle County*, 824 F.Supp. 477, 485 (D. Md. 1993) (holding that a plaintiff's conclusory allegations insufficient to

maintain claim); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (finding that Courts need not assume the truth of legal conclusions couched as factual allegations).

Further, Plaintiff has provided no deposition or documentary evidence, or any other evidence, to support this general and conclusory claim of a retaliatory or racial bias on the part of Smith purportedly arising out of the events when he visited the DMV with a friend a year prior. *See Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986) (stating that "(a plaintiff's) conclusory allegations of. . . discrimination are not sufficient to establish liability."); *Wright v. Vitall*, No. 91-7539, 1991 WL 127597 at**1 (4th Cir. July 16, 1991) (concluding that retaliation claim based on mere conclusory statements cannot withstand defendants' summary judgment motion).

As for Plaintiff's claim that, when he subsequently went back to the Ridgeland DMV, Smith still would not let him apply for a driver's license, this allegation fails to show any intent on Smith's part to violate Plaintiff's constitutional rights. There is no constitutional right to a driver's license. *Matthew v. Honish*, 233 Fed.Appx. 563, 564 (7th Cir. May 10, 2007) (finding no fundamental right to drive a motor vehicle). Further, it is undisputed that Plaintiff's pending charges were not resolved until after this visit by Plaintiff to the Ridgeland DMV office, and Smith's refusal to allow Plaintiff to obtain a license because of her knowledge of Plaintiff's pending court case does not amount to a violation of Plaintiff's constitutional rights.

Finally, the only evidence before this Court with respect to Plaintiff's voter registration claim are Plaintiff's allegations that Smith "refused to return Plaintiff's voter registration card when Plaintiff went to [the] Ridgeland DMV attempting to pay the One Hundred Dollar reinstatement fee and get his license." (Dkt. No. 59, Amended

Complaint, at ¶ 14; *see also*, Dkt. No. 78, Plaintiff's Affidavit, ¶ ¶ 6 and 9. Defendant argues in her brief that Plaintiff's voter registration card contained a different birth date for the Plaintiff, so even if she did still possess this document it would have been reasonable for her to retain it. Even assuming this allegation to be true for purposes of summary judgment, there is no evidence on which to find that a reasonable official would have believed under the circumstances presented that they were in any way violating Plaintiff's constitutional rights by not returning this document to the Plaintiff. Plaintiff avers in his Amended Complaint that he simply went out and got another one, and there is no allegation that Plaintiff was in any way denied the right to vote. *Wiley*, 14 F.3d at 995 (stating "[i]f there is a 'legitimate question' as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity"); *Harlow*, 457 U.S. at 818 (Qualified immunity attaches where government official does not violate a clearly established statutory or constitutional right of which a reasonable person would have known).

## Conclusion

Based on the foregoing, the Defendant Smith is entitled to qualified immunity from suit on Plaintiff's claims. Therefore, Defendant Smith's motion for summary judgment is granted, and Defendant Smith is dismissed as a party defendant in this action.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

October 19, 2010
Charleston, South Carolina